# EXHIBIT A

**HILLARY JOHNS, TRIAL LAWYER**
Hillary Johns, Esq. (SBN 167944)
Stephen Sirota, Esq. (SBN 98693)
9461 CHARLEVILLE BOULEVARD #742
BEVERLY HILLS, CA 90212
Telephone: 310-492-4009
Fax: 310-460-0222
hillary@hillarytriallawyers.com
stephen@hillarytriallawyers.com

Attorneys for Plaintiff,
JAMES P. JIMIRRO, an individual

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/02/2024 11:11 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| JAMES P. JIMIRRO, AN INDIVIDUAL<br><br>Plaintiffs,<br><br>vs.<br><br>THE PALEY CENTER FOR THE MEDIA A 501(3)(C ) NONPROFIT CORPORATION ORGANIZED AND FORMED UNDER THE LAWS OF THE STATE OF NEW YORK AND REGISTERED TO DO BUSINESS IN THE STATE OF CALIFORNIA; AND DOES 1-50 INCLUSIVE,<br><br>Defendants. | Case No.: 24STCV31571<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **BREACH OF IMPLIED IN FACT CONTRACT;**<br>3. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>4. **BREACH OF FIDUCIARY DUTY;**<br>5. **NEGLIGENT MISREPRESENTATION;**<br>6. **INVOLUNTARY TRUST;**<br>7. **UNJUST ENRICHMENT;**<br>8. **CONVERSION;**<br>9. **VIOLATION OF BUSINESS & PROFESSIONS CODE 17200, ET. SEQ.;**<br>10. **CONSTRUCTIVE TRUST;**<br>11. **ACCOUNTING;**<br>12. **DECLARATORY RELIEF**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff JAMES P. JIMIRRO ("JIMIRRO" or "Plaintiff") hereby submits his Complaint and alleges as follows:

# I.    THE PARTIES

1.    JAMES P. JIMIRRO is an individual residing in the County of Los Angeles, State of California.

2.    The PALEY CENTER FOR THE MEDIA ("PALEY CENTER") is a nonprofit 501(3)(C) corporation formed in the State of New York and registered to do business in the State of California with the California Secretary of State since 1994.  The PALEY CENTER maintains offices in New York City, New York and in Los Angeles, California with a business address of 1801 Century Park East Suite 1500, Los Angeles, California 90067. In addition to having staff that conducts business in the State of California, the PALEY CENTER maintains its television and media archives at the Beverly Hills Public Library which now, with the assistance of the PALEY CENTER staff, stores and maintains a collection that contains at least 160,000 items, including recordings of key moments in broadcast history.  The collection is described as "the nation's foremost public archive of television and radio programming" with "programs covering almost 100 years of television and radio history, including news, public affairs programs, documentaries, performing arts programs, children's programming, sports, comedy and variety shows, and commercial advertising".  The PALEY CENTER in Los Angeles hosts many prestigious events including PaleyFest LA.  The William S. Paley Television Festival, also known as PaleyFest LA, is an annual television festival hosted by the PALEY CENTER in the Los Angeles area. Founded in 1984, the festival, held annually in the spring, features panels composed of the casts and prominent creative talent from popular television shows such as Community, Parks and Recreation, Mad Men, and Lost, among many others. The panels field questions from a moderator and a public audience and often present exclusive content from their respective series. The festival has been in many venues over its history, including the Los Angeles County Museum of Modern Art Bing Theater, the Director's Guild of America theater, the Cinerama Dome, the Saban Theater in Beverly Hills, and currently in the Dolby Theater in Hollywood.

# II.    JURISDICTION AND VENUE

3.    Jurisdiction and venue here are proper because the Plaintiff resides in the County of Los Angeles and the Defendant conducts business within the County of Los Angeles, State of California.

1    4.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395

2  because the claims and injuries occurred in the County of Los Angeles, the Defendant has one of their

3  principal places of business in Los Angeles County and conducts business in this State and County.

4    **III.    STATEMENT OF FACTS**

5    5.    In about 2016, Plaintiff entered into a dialogue with PALEY CENTER and DOES 1 to

6  50, inclusive, in which Plaintiff would contribute the sum of $1,000,000 to the PALEY CENTER for the

7  purpose of creating and implementing a media impact series with his name. After a series of

8  negotiations between the Plaintiff, the PALEY CENTER and Does 1 to 50, inclusive, the parties agreed

9  that the series would be titled "The James P. Jimirro Media Impact Series" (the "Series"). Subsequently,

10  correspondence addressed September 20, 2016 addressed to Maureen Reidy, the parties entered into a

11  written agreement whereby Plaintiff would contribute the sum of $1,000,000 for the Series bearing his

12  name. The written agreement was signed by Plaintiff on (October 4, 2016) and David Schoer of the

13  PALEY Center ("Agreement").  Attached hereto as **Exhibit '1'** is a true and correct copy of the parties'

14  written agreement which is referred to and incorporated herein by this reference.  Plaintiff subsequently

15  contributed the sum of $1,000,000 USD to the PALEY CENTER pursuant to the Agreement as he

16  understood it.  The sum of $1,000,000 USD was paid by Plaintiff to the PALEY CENTER via bank

17  wire.

18    6.    During the course of the negotiations leading up to the execution of this Agreement,

19  Plaintiff entered into several exploratory negotiations with the PALEY CENTER and its employees,

20  representatives and agents, including, inter alia, Maureen Reidy ("Reidy"), Diane Lewis ("Lewis"), and

21  Ron Simon ("Simon") and Does 1 to 50, inclusive, to ensure that the Series would be in adherence to his

22  stated goals, expectations, use of outreach, and other prerequisites. At all times herein mentioned, Reidy,

23  Lewis, and Simon and DOES 1 to 50, inclusive were acting in the capacities as the employees, agents

24  and representatives of the PALEY CENTER and DOES 1 to 50, inclusive.  The primary premise of the

25  Series was to present a balanced point of as to media impact on of society, and in politics in particular.

26  Some of the critical points which were emphasized by Plaintiff during these exploratory negotiations

27  with the PALEY CENTER and Does 1 to 50, inclusive, were as follows.

28

A.  The Series was to have a meaningful high profile impact achieved by exploring often controversial subjects from several points of view.  It would include panelists that were not necessarily popular or mainstream but were willing to debate the hard issues. One of the main goals of the Series was to help people understand the media and its role in society, and thereby deal with it more effectively.

B.  The Series would empanel celebrity, well known or other high-profile individuals to gain viewers, add impact, and generate interest in the Series.

C.  The Series would be actively promoted through social media, other media and in connection with a variety of organizations and news outlets.  It was specifically discussed and agreed to that there would be an extensive use of social media throughout several platforms to promote and elevate the Series.

D.  Outreach for the Series would be an essential and critical part of the Series. This would include, inter alia, the use of media blasts and promoting the Series extensively on social media. The widespread use of social media would include reaching out to students.

E.  Outreach to students would include introducing and presenting curriculum to teachers, suggesting course activities and other activities related to the Series, study guides for students, curriculum for teacher, professor, instructor and student use on a widespread basis. Student and teacher guidebooks, written materials, curriculum, and other instructional devices, including videos and written presentations would be used as part of student outreach. Part of this outreach would include student interface as to the media and society.

F.  Press releases would be used on a regular basis to publicize and promote the Series.

G.  The Series would include promotional and feature length interviews with the Plaintiff and other panelists.

H.  Media and extensive outreach to students, teachers, professors, the public, and other viewers, would be an essential part of the Series.

7.    That the Series would include without limitation panelists from different geographic areas and with different points of view. The Plaintiff expressed several times that, while the views of the

1   panelists may not necessarily reflect the views of the PALEY CENTER or a specific group or

2   individual, that they would be diverse and balanced.   During those negotiations, at which Plaintiff asked

3   for these assurances, Plaintiff did in fact receive numerous assurances from Reidy, Lewis, Simon, and

4   other agents and representatives of the PALEY CENTER and Does 1 to 50, inclusive, that his goals for

5   the Series could and would be attained. Plaintiff made clear that his critical points, format, student and

6   other outreach, and guidelines for the Series detailed above and throughout this Complaint would have

7   to be included in the Series for him to Agree to contribute the sum of $1,000,000 ("Contribution") to the

8   PALEY CENTER.  Plaintiff made his Contribution to the PALEY CENTER because it was his

9   understanding that the PALEY CENTER and Does 1 to 50, inclusive, were in agreement with and

10  enthusiastic about his stated goals and expectations for the Series.  In fact, Reidy, Lewis, Simon and

11  other agents and representatives of the PALEY CENTER and Does 1 to 50, inclusive, were not only in

12  agreement with the Plaintiff's proposal and terms and conditions of his Contribution and the format and

13  guidelines for the Series as well as the use of his likeness, image, creative works, and intellectual

14  property, but they were very enthused about it. Reidy, Lewis, Simon and the agents and representatives

15  of the PALEY CENTER and Does 1 to 50, inclusive, repeatedly stated their enthusiasm for and interest

16  in the Series; that they liked the idea of an enduring Series; that the PALEY CENTER and Does 1 to 50,

17  inclusive,  had never had a Series like this before; and that they were excited about a series that would

18  continue indefinitely. Representations were made to the Plaintiff by Reidy, Lewis, Simon and other

19  agents and representatives of the PALEY CENTER and DOES 1 to 50 inclusive, which included, inter

20  alia.

21      • The Series proposed by Plaintiff would be a feather in the cap of the PALEY CENTER.

22      • The Series would be a high priority program for the PALEY CENTER.

23      • The Series would be a seminal program in which the agents and representatives of the

24          PALEY CENTER and DOES 1 to 50, inclusive, had broad opportunities to challenge the

25          world, just a bit, with balanced and forthright discussions. The Series would involve a lot

26          of creative extensions outreach beyond the one-night theater program. The theater

27          program was to be only a starting point out of which massive outreach would flow.

28

- The student outreach component of the Series would be created and implemented as discussed by the Plaintiff.
- Agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, stated that there was bias in the media, without question, and the Series would help the public to come to grips with and better understand that.
- Agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, assured the Plaintiff that they had no intention of censoring subjects or blackballing of panelists for the Series.
- Agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, assured the Plaintiff not to be concerned about the fact that the PALEY CENTER is located in the New York media bubble and that the Series would include an expansive number of panelists from other geographic locations and points of view, without censorship.
- Called Plaintiff's idea of having evenly balanced panelists and the Series 'brilliant'.
- There were assurances made to the PLAINTIFF by agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, that the PALEY CENTER and DOES 1 to 50, inclusive, had not always done a lot of outreach but agreed to change that for the Series.  Further assurances and representations were made to the Plaintiff by the agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, that they recognized that the value of Plaintiff's initiative and that the real value of the Series lay in outreach,  to with the broader public and particularly to students and teachers.

Other discussions and representations were made by Reidy, Lewis, Simon, agents and representatives of the PALEY CENTER, and Does 1 to 50, inclusive, including, inter alia, a wine and cheese reception after each Series presentation. This occurred after the first three presentations, but was unilaterally discontinued, thereafter.

If Plaintiff had not received these assurances and representations by Reidy, Lewis, Simon and other agents and representatives of the PALEY CENTER and Does 1 to 50, inclusive, he would not have agreed to the Contribution, the use of his name, likeness and image for the Series, or have allowed any

1   of his ideas, time, labor, creative content, or intellectual property to be used in the Series. The Plaintiff

2   reasonably relied upon the representations and assurances of Reidy, Lewis, Simon, agents, and

3   representatives of the PALEY CENTER and Does 1 to 50, inclusive, in agreeing to contribute his funds,

4   labor, name, likeness, image, ideas, creative works, intellectual property, time, labor, industry contacts,

5   business acumen and contacts in the industry to create the Series.

6       8.      It was based on the assurances of Reidy, Lewis, Simon and other agents and

7   representatives on behalf of the PALEY CENTER Does 1 to 50, inclusive that Plaintiff agreed to and

8   signed the Agreement. But for the assurances of Reidy and Lewis, Simon and other agents and

9   representatives and Does 1 to 50, inclusive, during the exploratory negotiations with Reidy, Lewis,

10  Simon and other agents and representatives, and the PALEY CENTER and Does 1 to 50, inclusive and

11  their assurances, Plaintiff would not have signed the Agreement, paid the Contribution in the sum of

12  $1,000,000 to the PALEY CENTER or contributed his labor, time, creative works, intellectual property

13  created and developed by the Plaintiff or provided assistance to the PALEY CENTER and Does 1 to 50,

14  inclusive, to create and develop intellectual property, or used his contacts within the industry to create

15  and develop the Series. Subsequent to Plaintiff wiring the Contribution to the PALEY CENTER, a press

16  release was issued calling Plaintiff's Contribution "a truly historic gift for Paley".  2017-Jimirro-Media-

17  Impact-Series.pdf (paleycenter.org); THE PALEY CENTER FOR MEDIA TO LAUNCH THE JAMES

18  P. JIMIRRO MEDIA IMPACT SERIES (globenewswire.com). The PALEY CENTER and Does 1 to

19  50, inclusive, and its agents and representatives, including Reidy, Lewis, and Simon, working within the

20  scope of their employment and positions and duties with the PALEY CENTER and Does 1 to 50,

21  inclusive, caused Plaintiff to repose trust and confidence in connection with the Series and his financial

22  Contribution, as well as additional contributions of his time, labor, creative works, and intellectual

23  property. The PALEY CENTER is a 501(3) (C) corporation and undertakes a fiduciary duty as to each

24  individual contributing funds to it including the Plaintiff. In addition, Defendants the PALEY CENTER

25  and DOES 1 to 50, inclusive voluntarily accepted a fiduciary role with respect to Plaintiff, including the

26  duty to act with the utmost good faith, loyalty and the best interests of the Plaintiff and the Series.

27      9.      During the time period of October, 2016 to October, 2023, the PALEY CENTER and

28  DOES 1 to 50, inclusive organized and aired the following presentations in the Series. The Series would

1    not have happened if Plaintiff had not contributed his funds, his ideas, creative works, labor, name,

2    likeness, and image.

3        •    James P Jimirro Media Impact Series: Clash of the Titans, The Continuing Tensions Between

4    the Presidency and the Press 09/27/2017 https://www.paleycenter.org/assets/Press-Releases/2017-

5    Jimirro-Media-Impact-Series.pdfhttps://www.paleycenter.org/events/2017-clash-of-the-titans-3/

6

7        •    James P Jimirro Media Impact Series: The Midterm Elections 2018: Media and Politics in a

8    Polarized Country 09/25/2018 https://www.paleycenter.org/events/2018-the-midterm-elections-2/

9

10        •    James P Jimirro Media Impact Series: Media Bias: Fact or Fiction? 09/17/2019

11    https://www.paleycenter.org/events/2019-media-bias-fact-or-fiction/

12

13        •    James P Jimirro Media Impact Series: Debating the Debates: A Paley Town Hall 09/23/2020

14    https://www.youtube.com/watch?v=qjC9kY1Ohw0

15

16        •    James P Jimirro Media Impact Series: The President and the Press 11/05/2021

17    https://www.youtube.com/watch?v=SwYvlAfld2Y

18

19        •    James P Jimirro Media Impact Series: The Media and the Midterms 10/24/2022

20    https://www.youtube.com/watch?v=fUKaRupxjh0&amp;list=PLUVeOmkpnYTzSsxXugT6gjBgu5ps

21    2vCvN&amp;index=9

22

23        •    James P Jimirro Media Impact Series: Social Media and the Public Square Balanced or

24    Biased? 10/06/2023 https://www.youtube.com/watch?v=LZw2jCmAy0o

25

26        There is the additional program of the Series which aired on September 25, 2024 titled "The

27    Media Impact Series: A Presidential Election Unlike Any Other: The Media and the 2024 Race"

28    https://www.paleycenter.org/events/2023-jimirro-social-media-and-the-public-square/. It was created,

1    organized, scheduled and implemented with Plaintiff's funds, creative work, intellectual property, ideas,

2    and as part of the Series proposed and created by the Plaintiff.

3         10.     Problems arose with the Series within two years of the parties signing the Agreement

4    including, inter alia, the content of the Series, advertising, panelists, censorship as to certain viewpoints

5    and blackballing certain panelists. Further, there were only minimal promotional and press efforts, lack

6    of outreach as agreed particularly as to students and teachers, and ineffective use of social media and

7    other media pertaining to the Series. While Plaintiff was purportedly contractually allowed to be

8    involved in the Series, it was not organized, structured, or implemented effectively, not only as to the

9    substance of each program, but as to the panelists, censorship of certain viewpoints, blackballing of

10   panelists, lackluster promotional efforts, lack of the school and teacher outreach, and lack of outreach. In

11   October, 2018, Plaintiff corresponded with Lewis and Simon, agents of the PALEY CENTER and

12   expressed his concerns as to the following.

13        A.   The timing of the Series was not well planned or effectuated. The Plaintiff expressed

14              concerns that not enough effort or preplanning was done for each program in the Series,

15              often resulting in him and the PALEY CENTER scrambling at the last minute to find

16              speakers.

17        B.  Plaintiff's ideas as to choice of panelists were either summarily denied without explanation

18              or not considered. Plaintiff expressed concern about this was occurring and asked as to

19              further details as to why this transpired; he did not receive a response.

20        C.  Communication was slow and incomplete with the PALEY CENTER, its agents,

21              employees, and representatives and DOES 1 to 50, inclusive. Plaintiff stated that he was

22              concerned that he would often wait for weeks without hearing back from Lewis or Simon or

23              anyone from the PALEY CENTER or DOES 1 to 50, inclusive, about a particular program,

24              its planning or its content. What communications that he did receive often did not have

25              enough information for him to be meaningfully responsive.

26        D.  The use of celebrity, high profile or well-known individuals as panelists was not being put

27              into effect with the Series programming. Plaintiff expressed concern that the first program in

28              the Series had high profile or well-known panelists but that was subsequently not the case.

Certain viewpoints proposed and potential panelists recommended by the Plaintiff who otherwise available and qualified were being censored and panelists were either being blackballed or summarily declined without explanation and upon what appeared to be arbitrary standards. The Plaintiff further stated that a sound program would include celebrity, high profile or well-known panelists to attract viewers and attendees and then implementation of the robust social media outreach program. The Plaintiff had stated several times to REIDY, SIMON, and LEW, the PALEY CENTER, its agents, employees, and representatives and DOES 1 to 50, inclusive, that a broad outreach not only to students, but to the press, other media outlets and constituencies was critical; It was what he was promised but not done.

E. The current venue and structure of the program was limited to a small theater event with a few social media viewers and no significant student outreach. There was only limited use of social media to promote the Series, few to no press releases, minimal promotional efforts and no feature stories about the Series by the PALEY CENTER and Does 1 to 50, inclusive. The exploratory discussions had discussed reaching out to constituencies and other outlets to gather attention, viewers, and impact so that the Series could be a part of the general conversation.

11. Plaintiff had further verbally expressed concern about procrastination as to planning, censorship of certain voices, delays on obtaining a subject for a particular program, enlisting panelists with little knowledge of the subject or with limited viewpoints on controversial topics. The decisions to blackball certain proposed panelists and censor other viewpoints, were made by agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, and were based on arbitrary standards the reasons for which were not discussed with the Plaintiff. It would sometimes take agents and representatives from the PALEY CENTER up to six weeks to respond to the Plaintiff. There was, additionally, a lot of turnover within the PALEY CENTER. Employees and other individuals assigned to or working on the Series, many of whom lacked familiarity, knowledge and sometimes the skill sets to effectively work on, organize and implement the Series hindered all agreed- upon aspects of the program. The PALEY CENTER, its agents, and representatives and DOES 1 to 50, inclusive gave

1   Plaintiff some assurances during that time period in 2018 and subsequent to Plaintiff's correspondence,

2   that they would work with him to effectuate the Series as promised, warrantied, and negotiated as part of

3   the parties' Agreement and as discussed during their exploratory negotiations before the Agreement was

4   signed.  Based on these continued assurances, the terms of the parties' Agreement, and the assurances

5   made to the Plaintiff during the exploratory negotiations, Plaintiff reasonably relied that the PALEY

6   CENTER, its agents, employees, and representatives and DOES 1 to 50, inclusive would abide by the

7   terms of the Agreement including the representations made during their exploratory negotiations and

8   that the PALEY CENTER and its agents and representatives and DOES 1 to 50, inclusive would make

9   efforts to improve the content, outreach, promotional efforts, and choice of panelists in the Series.  The

10  PALEY CENTER and its agents and representatives, and DOES 1 to 50, inclusive, failed, refused and

11  neglected to not only to comply with the terms of the parties' Agreement but to abide by the

12  representations, assurances and warranties made to the Plaintiff during their exploratory negotiations

13  and subsequent to the Agreement being signed.

14       12.     Subsequent to 2018, the PALEY CENTER, its agents, representatives, and DOES 1 to

15  50, inclusive failed, refused and neglected to abide by the terms or the parties' Agreement as well as the

16  assurances, representations, and warranties that they made to the Plaintiff before the Agreement was

17  signed and continually provided to the Plaintiff after the Agreement was signed.

18       13.     In reasonable reliance on the PALEY CENTER's, its agents' and representatives' and

19  DOES 1 to 50, inclusive representations and assurances and in accordance with their Agreement,

20  Plaintiff continued to contribute his time, labor, contacts, creative works, and other intellectual property

21  to the Series. The problems continued with the blackballing of qualified panelists, censorship of certain

22  viewpoints, failure to conduct any meaningful outreach to students and other constituencies, failure to

23  create and develop written materials, study guides, and curriculum as part of the student outreach, the

24  failure to use social media or other means to reach out to students and the public at large so that they

25  could learn about the media and its role in society, and failure in promoting the Series through social

26  media and other media. Plaintiff even managed to arrange for C-Span to air one of the programs. The

27  PALEY CENTER, its agents, representatives, and DOES 1 to 50, inclusive without any reason given,

28  delayed in this critical time period causing the program to lose out on having C-Span as an outlet for the

1  Series. The PALEY CENTER, its agents, representatives, and DOES 1 to 50, inclusive in its delays,

2  neglect, and refusal to cooperate lost out on a proverbial golden TV opportunity for the Series. The

3  program for that year was seen only in a small theater and garnered  only about 500 social media

4  viewers. There was minimal to no student and teacher outreach. There were no guidebooks and study

5  guides for students, curriculum for teachers or other student outreach materials created and distributed as

6  had been agreed.

7       14.    Upon realizing that the PALEY CENTER, its agents and representatives, and DOES 1 to

8  50, inclusive had no serious interest in or intention with abiding by the terms of their Agreement, their

9  assurances, their warranties, or in making any real effort to promote the Series to make it wide-reaching,

10  Plaintiff requested that his name be removed from the Series name and that he receive an accounting for

11  how the funds in his Contribution were allocated and spent. As of the date of this pleading, the

12  Plaintiff's name is not on the 2024 Series program but remains online as to previous programs and he

13  has not received an accounting from the PALEY CENTER, its agents and representatives, and DOES 1

14  to 50, inclusive or any indication if he will receive such accounting.

15       15.    Plaintiff was not compensated for his time contributing to the Series including his work

16  creating and contributing to content, including the proposal of ideas, speakers, contacts, sponsors,

17  outlets, and other networks to air the Series. Plaintiff was not compensated for his creative works and

18  other intellectual property, including, inter alia, ideas, moral rights, publicity rights, rights of

19  commercial exploitation, research and other original writings, and dialogue, that were developed and

20  contributed towards the Series. There is no known agreement in place regarding unrestricted use of

21  Plaintiff's name, image and likeness, or as to the use or ownership or publicity rights of the creative

22  content and intellectual property contributed and developed by the Plaintiff.  Plaintiff was not

23  compensated for the use of his name, creative works or intellectual property in the Series which was

24  presented once a year from October, 2017 to October, 2023. The Plaintiff was not compensated for his

25  part in developing the Series which aired in September of 2024.  The PALEY CENTER, its agents, and

26  representatives, and DOES 1 to 50, inclusive have possession of and full access to all of the creative

27  work, intellectual property, fruits of the Plaintiff's time and labor relating to the Series as well as the

28  Plaintiff's money whereas the Plaintiff does not.  There are no known agreements signed by Plaintiff as

1  to the use of his name, likeness and image, labor, ideas, creative works or intellectual property other

2  than the Agreement referred to within this Complaint.  The Series is continuing and being advertised

3  including the September 25, 2024 presentation detailed above. While the September 25, 2024 Series no

4  longer bears Plaintiff's name, it does include his money, ideas, labor, creative works, and intellectual

5  property in a key and unprecedented presidential race.  Plaintiff has requested an accounting of how the

6  Contribution he made was allocated and otherwise spent in relation to the Series or other projects. As of

7  the date of this pleading, he has not received an accounting.

8      16.    There may be additional facts not yet known to Plaintiff as it is clear that many material

9  facts were not disclosed to him during the course of his dealings with the PALEY CENTER, its

10  representatives and agents and DOES 1 to 50, inclusive. Plaintiff was not allowed access to that

11  information during the course of his dealings with the PALEY CENTER, its agents and representatives,

12  and DOES 1 to 50, inclusive.

13      17.    Plaintiff is presently uncertain of the true names and capacities of defendants sued herein

14  as DOES 1 through 50, INCLUSIVE, and therefore sues these defendants by fictitious names. Plaintiff

15  will seek leave to amend this Complaint to allege the true names and capacities when the same have

16  been ascertained. Plaintiff is informed and believes, and based thereon alleges, that in doing some or all

17  of the acts, errors, omissions, and conduct alleged herein, such fictitiously named defendants were acting

18  within the course and scope of agency relationships with respect to one another and the other defendants

19  named herein.

20  **FIRST CAUSE OF ACTION**

21  **BREACH OF CONTRACT**

22  ***(AGAINST PALEY CENTER AND DOES 1-50, INCLUSIVE)***

23      18.    Plaintiff refers to and incorporates herein by this reference all of the allegations set forth

24  in paragraphs 1 through 17 of this Complaint as though fully set forth herein.

25      19.    Plaintiff entered into a written Agreement with the PALEY CENTER and DOES 1 to 50,

26  inclusive which was signed by him on October 4, 2016.

27      20.    The Plaintiff fully performed all of his responsibilities under the terms of the agreement

28  except those that were excused or made impossible by events and circumstances not within his control.

1  In addition, Plaintiff allowed the PALEY CENTER and DOES 1 to 50, inclusive, the use of his name,

2  likeness and image for the Series, contributed his time, labor, his intellectual property, and his creative

3  works as well as his contacts in the industry to the Series and for the benefit of the PALEY CENTER

4  and DOES 1 to 50, inclusive. Plaintiff was not compensated for the use of his name, image, and

5  likeness, for his time, labor, for his creative works or his intellectual property, his concept or any of his

6  other efforts, and work of any kind as to the Series.

7      21.    The PALEY CENTER as a 501(3)( C) corporation received a Contribution from Plaintiff

8  acted as and were a fiduciary holding the funds in the Plaintiff's Contribution and had a duty to use and

9  allocate those funds as specified in the parties' Agreement and as represented, warranted and assured by

10  the PALEY CENTER to the Plaintiff as well as the duty of good faith, loyalty and to act in the best

11  interests of Plaintiff based on his contribution and to effectuate the Series in a meaningful way. The

12  PALEY CENTER and DOES 1 to 50, inclusive breached this contract by, inter alia, the following acts.

13      A.  Failing to adequately promote the Series on social media or through any other platform or to

14          use outreach to students and teachers as agreed.

15      B.  Failing to develop and implement the student outreach component of the Series. This

16          includes, inter alia, failing to develop student guides, curriculum for teachers, to reach out at

17          all to students and teachers, to use social media in any effective way to reach out or engage

18          students and teachers, or to create a website, social media links or any viable means for a

19          student outreach program,

20      C.  Failing to adhere to the representations and assurances made to the Plaintiff as detailed

21          within this Complaint.

22      D.  Failing to pursue or obtain appropriate outlets for the Series, including, inter alia, stalling as

23          to following up with C-Span causing the opportunity to be lost.

24      E.  Failing to reach out and engage to students, teachers, and other constituencies to get traction

25          for the Series, obtain viewers, and interest in the Series, especially among young people.

26      F.  Engaging in censorship as to certain viewpoints and panelists by blackballing particular

27          panelists based on an undisclosed arbitrary standard.

28

G. Failing to adhere to, abide by, or otherwise make good on the assurances provided to the Plaintiff during the exploratory negotiations before the Agreement was signed.

H. Failing to adequately or competently choose content in keeping with the Series as proposed, by black balling or censoring certain potential panelists.

I. Failing to adhere to, abide by, or otherwise make good on the assurances provided to the Plaintiff during the exploratory negotiations after the Agreement was signed.

J. On information and belief, failing, refusing, and neglecting to use the Contribution in the manner for which is was intended and contracted for in the Agreement.

K. Failing, refusing and neglecting to provide an accounting as requested by the Plaintiff.

L. Breaching its fiduciary duty to the Plaintiff as detailed throughout this Complaint and as set forth in the Third through Fifth Causes of Action in this Complaint.

M. By unreasonably delaying in responding to the Plaintiff and often responding to him when it was too late to take into consideration some of his contributions.

N. By failing, refusing, and neglecting to respond to the Plaintiff in a timely manner during the course of planning each program.

O. By censoring or otherwise denying certain panelists access to the Series or the opportunity to be involved with the Series based on arbitrary standards not disclosed to or discussed with the Plaintiff.

P. By inserting its own agenda and arbitrary standards into the Series contrary to what was assured to the Plaintiff during the exploratory negotiations and without consulting with or notifying the Plaintiff.

Q. By failing, refusing and neglecting to allocate the Contribution in a manner consistent with its assurances to the Plaintiff and the parties' written agreement.

R. Accepting the Plaintiff's Contribution with no intention, plan or serious interest in using the Contribution for its intended purpose.

S. Failing to involve consistently competent individuals with the planning, organization, promotion and implementation of the Series.

T.  Negligently, intentionally and in breach of their fiduciary duty to the Plaintiff failing, refusing and neglecting to competently manage, prepare or effectuate the Series.

U.  Using and misappropriating the Plaintiff's name, likeness and image.  Improperly using the Contribution in a manner inconsistent with the parties' Agreement. Improperly using and misappropriating the Plaintiff's time, labor, creative works, intellectual property and contacts for a purpose never disclosed or intended by or agreed to by the Plaintiff, contrary to the assurances provided by the PALEY CENTER, its agents, representatives and DOES 1 to 50, inclusive, and contrary to the goals and stated purpose of the Series.

22.  To the extent that said breaches of the parties' Agreement or implied in fact agreement described subsequent hereto and within this Complaint occurred more than two years prior to the commencement of the action, defendants and DOES 1 to 50, inclusive, fraudulently and negligently concealed their conduct in that they failed, refused and neglected to respond to Plaintiff in any meaningful way, delayed in responding, made promises and assurances to the Plaintiff that they would rectify the situation but failed to do so, and continued to induce Plaintiff to be involved in the Series. Plaintiff was never given a clear answer as to how the funds would be invested, if improvements or changes would be made to the Series or if the PALEY CENTER and DOES 1 to 50, inclusive, ever really intended to establish and implement the Series as negotiated and represented to Plaintiff. There were instances in which the Defendants, PALEY CENTER and DOES 1 to 50, inclusive, did not respond adequately to Plaintiff's concerns. When the PALEY CENTER, its agents and representatives, and DOES 1 to 50, inclusive, did respond to the Plaintiff, their agents and representatives and DOES 1 TO 50, inclusive, and each of them continued to give Plaintiff assurances, warranties and representations that the Defendants, DOES 1 to 50, inclusive, and each of them would adhere to the parties' Agreement, implied in fact contract, and their fiduciary duties to the Plaintiff and the representations, assurances, and warranties made to the Plaintiff by each of them.

23.  The PALEY CENTER's and DOES 1 to 50, inclusive breach of this contract caused harm to the Plaintiff, including but not limited to the amount of the Contribution, the use of the Plaintiff's time and labor, the use of the Plaintiff's creative works and intellectual property, the use of his labor, time and efforts, the use of the Plaintiff's contacts in the industry, concept, and business

1  acumen. The Series that bears his name experienced censorship of ideas and speech, blackballing of

2  panelists and limited marketing for outreach not in keeping with the parties' Agreement. The assurances

3  made to the Plaintiff or the intentions of the Plaintiff based on assurances and representations made to

4  him when he made his Contribution resulted in damages, all in an amount to be proven at trial, but no

5  less than $250,000. Plaintiff requests restitution in the amount and to the extent to which the PALEY

6  CENTER and Does 1 to 50 inclusive and each of them were unjustly enriched.

7  ## SECOND CAUSE OF ACTION

8  **BREACH OF IMPLIED IN FACT CONTRACT**

9  *(AGAINST PALEY CENTER AND DOES 1-50, INCLUSIVE)*

10  24.    Plaintiff refers to and incorporates herein by this reference all of the allegations set forth

11  in paragraphs 1 through 23 of this Complaint as though fully set forth herein.

12  25.    By their actions, Plaintiff and the PALEY CENTER and DOES 1 to 50, inclusive,

13  entered into a contract whereby Plaintiff agreed to make a Contribution of $1,000,000, allow the use of

14  his name, likeness, and image to the Series, contribute his labor and time, develop and contribute his

15  creative works and intellectual property, contribute and assist in implementing a plan developed by the

16  Plaintiff.  The PALEY CENTER and DOES 1 to 50, inclusive, made definitive actions, representations,

17  warranties, and assurances.  Plaintiff reasonably relied upon the actions, representations, warranties, and

18  assurances of the PALEY CENTER, its agents, representatives, and DOES 1 to 50, inclusive, and the

19  fact that the Series was started as assurances that the PALEY CENTER, its agents, representatives, and

20  DOES 1 to 50, inclusive, would, abide by their assurances, representations, and warranties as to the

21  Series.  This includes as detailed within this Complaint and, inter alia.

22      A. The extensive use of social media, outreach, student and teacher outreach, and the

23         development of outreach materials to promote the Series

24      B. To develop and implement the student outreach component of the Series. This includes,

25         inter alia, to develop student study guides, curriculum for teachers to reach out to students

26         and teachers, to use social media to reach out and engage students and teachers, or to create

27         a website, social media links or any viable means for a student involvement program

28      C. Feature length interviews with the Plaintiff and the panelists to promote the Series.

1      D.  Press interviews with the Plaintiff and the panelists.

2      E.  Extensive press news coverage

3      26.    THE PALEY CENTER, its agents and representatives and DOES 1 to 50, inclusive, either

4  knew or had reason to know that Plaintiff was reasonably relying upon their actions, representations,

5  assurances, and warranties when they accepted his Contribution, his labor and time, his agreement to use

6  his name, likeness and image. Paley then misused and misappropriated his creative works and

7  intellectual property, business acumen and efforts, and contacts within the industry. The PALEY

8  CENTER, its agents and representatives and DOES 1 to 50, inclusive, accepted all of these, value

9  received and more, from the Plaintiff. The PALEY CENTER, its agents and representatives, and DOES

10  1 to 50, inclusive, knew or had reason to know that it had fiduciary duties to the Plaintiff in accepting his

11  Contribution, that it had contractual and implied in fact duties, responsibilities and obligations to the

12  Plaintiff by accepting the Contribution, his time, business acumen, concept, labor, creative works and

13  intellectual property and the benefits of the implied in fact agreement as detailed herein and within this

14  Complaint.

15      27.    The PALEY CENTER, its agents, representatives and DOES 1 to 50, inclusive breached

16  the implied in fact contract by, inter alia, the following acts.

17      A.  Failing to adequately promote the Series on social media or through any other platform or

18          to use outreach to students and teachers as agreed.

19      B.  Failing to adhere to the representations and assurances made to the Plaintiff as detailed

20          within this Complaint.

21      C.  Failing to pursue or obtain appropriate outlets for the Series, including, inter alia, stalling

22          as to following up with C-Span causing the outlet and opportunity to be lost.

23      D.  Failing to reach out to students, teachers, and other constituencies to get traction for the

24          Series, obtain viewers, and interest in the Series. Failing to develop and implement the

25          student outreach component of the Series. This includes, inter alia, failing to develop

26          student guides, curriculum for teachers, to reach out at all to students and teachers, to use

27          social media in any effective way to reach out or engage students and teachers, or to

28          create a website, social media links or any viable means for a student outreach program.

E. By blackballing particular panelists based on an undisclosed and on information and belief arbitrary standard.

F. Failing to adhere to, abide by, or otherwise make good on the assurances provided to the Plaintiff during the exploratory negotiations before the Agreement was signed.

G. Failing to adhere to, abide by, or otherwise make good on the assurances provided to the Plaintiff during the exploratory negotiations and after the Agreement was signed..

H. Failing, refusing, and neglecting to use the Contribution in the manner for which was intended and contracted for in the Agreement.

I. Failing, refusing, and neglecting to provide an accounting as requested by the Plaintiff.

J. Breaching its fiduciary duty to the Plaintiff as detailed throughout this Complaint and as set forth in the Third through Sixth Causes of Action in this Complaint.

K. Unreasonably delaying in the development of each program each year in the Series, and unreasonably delaying in responding to the Plaintiff and often responding to him when it was too late to take into consideration some of his contributions or to take into consideration some of his contributions in keeping with the goals and stated purpose of the Series..

L. Failing, refusing, and neglecting to respond to the Plaintiff in a timely manner during the course of planning each program.

M. Using and misappropriating the Plaintiff's name, likeness and image in a manner that was not intended or agreed to by the Plaintiff.

N. Censoring, blackballing or otherwise denying certain panelists and potential panelists with certain points of view access to the Series.

O. Failing, refusing, and neglecting to allocate the Contribution in a manner consistent with its assurances to the Plaintiff and the parties' written agreement.

P. Arbitrarily rejecting panelists proposed by the Plaintiff without explanation.

Q. Accepting the Plaintiff's Contribution with no intention, plan or serious interest in using the Contribution for its intended purpose.

R.  Negligently, intentionally and in breach of their fiduciary duty to the Plaintiff to competently manage, prepare or effectuate the Series, as agreed upon.

S.  Improperly using and misappropriating the Plaintiff's name, likeness and image. Improperly using the Contribution in a manner inconsistent with the parties' Agreement. Improperly using and misappropriating the Plaintiff's time, labor, creative works, intellectual property and contacts for a purpose never disclosed or intended by or agreed to by the Plaintiff and contrary to the parties' agreement, contrary to the assurances provided by the PALEY CENTER, its agents, representatives and DOES 1 to 50, inclusive, and contrary to the goals and stated purpose of the Series.

28.   To the extent that said breaches of the parties' Agreement or implied in fact agreement described subsequent hereto and within this Complaint occurred more than two years prior to the commencement of the action, defendants and DOES 1 to 50, inclusive, fraudulently and negligently concealed their conduct in that they failed, refused and neglected to respond to Plaintiff in any meaningful way, delayed in responding, made promises and assurances to the Plaintiff that they would rectify the situation but failed to do so, and continued to induce Plaintiff to be involved in the Series. Plaintiff was never given a clear answer as to how the funds would be invested, if improvements or changes would be made to the Series or if the PALEY CENTER and DOES 1 to 50, inclusive, ever really intended to establish and implement the Series as negotiated and represented to Plaintiff. There were instances in which the Defendants, PALEY CENTER and DOES 1 to 50, inclusive, did not respond adequately to Plaintiff's concerns. When the PALEY CENTER, its agents and representatives, and DOES 1 to 50, inclusive, did respond to the Plaintiff, their agents and representatives and DOES 1 TO 50, inclusive, and each of them continued to give Plaintiff assurances, warranties and representations that the Defendants, DOES 1 to 50, inclusive, and each of them would adhere to the parties' Agreement, implied in fact contract, and their fiduciary duties to the Plaintiff and the representations, assurances, and warranties made to the Plaintiff by each of them.

29.   Plaintiff has been harmed by the PALEY CENTER, its agents, its representatives, and DOES 1 to 50, inclusive, in the manner described within this Complaint and incorporated

1  herein by this reference, and, inter alia, for the amount of the Contribution, the use of the Plaintiff's time

2  and labor, the use of the Plaintiff's creative works and intellectual property, the use of his labor, time

3  and efforts, the use of the Plaintiff's contacts in the industry, business acumen, and by a Series that bears

4  his name with content, censorship of ideas and speech, blackballing of panelists, lack of outreach and

5  lackluster programming not in keeping with the parties' Agreement, despite the assurances made to the

6  Plaintiff when he made his Contribution. The amount is to be proven at trial, but no less than $250,000.

7  Plaintiff requests restitution in the amount and to the extent which the PALEY CENTER and Does 1 to

8  50 inclusive and each of them were unjustly enriched.

9  　　　　WHEREFORE, Plaintiff prays for relief as set forth below.

10  **THIRD CAUSE OF ACTION**

11  **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

12  ***(AGAINST PALEY CENTER AND DOES 1-50, INCLUSIVE)***

13  　　　　30.　　Plaintiff refers to and incorporates herein by this reference all of the allegations set

14  forth in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

15  　　　　31.　　Plaintiff entered into a written Agreement with the PALEY CENTER and DOES 1 to 50,

16  inclusive which was signed by him on October 4, 2016. Plaintiff also entered into an implied in fact

17  contract with the PALEY CENTER and DOES 1 to 50, inclusive through actions, assurances, and a

18  course of conduct.

19  　　　　32.　　The Plaintiff fully performed all of his responsibilities under the terms of the Agreement

20  and the parties' implied in fact contract except those that were excused or made impossible by events

21  and circumstances not within his control.  In addition, Plaintiff allowed the PALEY CENTER and

22  DOES 1 to 50, inclusive, the use of his name, likeness and image for the Series, contributed his labor,

23  his time, his intellectual property, ideas, and his creative works as well as his business acumen and

24  expertise, and access to the contacts in the industry to the Series and for the benefit of the PALEY

25  CENTER and DOES 1 to 50, inclusive.  Plaintiff was not compensated for the use of his name, image,

26  and likeness, for his labor, for his creation of the Series, for his ideas, for his creative works or his

27  intellectual property, for the use of his concept, business acumen or other contributions to the Series.

28

33.    The PALEY CENTER as a 501(3)( C) corporation received a Contribution from Plaintiff acted as and were a fiduciary holding the funds from the Plaintiff's Contribution and had a duty to use and allocate those funds as specified in the parties' Agreement and as represented, warranted and assured by the PALEY CENTER, its agents, representatives, employees and DOES 1 to 50, inclusive, to the Plaintiff as well as the duty of good faith, loyalty and to act in the best interests of Plaintiff based on his contribution and to effectuate the Series as had been agreed.

34.    The PALEY CENTER and DOES 1 to 50, inclusive breached this Agreement, implied in fact contract, and the implied covenant of good faith and fair dealing by, inter alia, the following acts.

A.  Failing to adequately promote the Series on social media.

B.  Failing to use outreach to students, teachers and other educational parties.

C. Failing to pursue or obtain appropriate outlets for the Series, including, inter alia, stalling as to following up with C-Span causing the opportunity to be lost.

D.  Failing to extensively utilize press releases or other promotional efforts for the Series.

E.  Failing to reach out to students and other constituencies to get traction for the Series, obtain viewers, and interest in the Series.

F.  Blackballing certain panelists.

G. Using censorship on black balling certain panelists.

H. Failing to adhere to, abide by, or otherwise make good on the assurances provided to the Plaintiff during the exploratory negotiations before the Agreement was signed.

I.  Failing to adhere to, abide by, or otherwise make good on the assurances and representations made to the Plaintiff during the exploratory negotiations after the Agreement was signed and upon which the Plaintiff reasonably relied.

J.  Failing, refusing and neglecting, to use the Contribution in the manner for which was intended and contracted for in the Agreement and as represented and assured to the Plaintiff during exploratory negotiations.

K. Failing, refusing and neglecting to provide an accounting as requested by the Plaintiff.

L.  Breaching its fiduciary duty to the Plaintiff as detailed throughout this Complaint and as set forth in the Third to Fifth Causes of Action in this Complaint.

M.  Unreasonably delaying in the development of each program each year in the Series. By unreasonably delaying in responding to the Plaintiff and often responding to him when it was too late to take into consideration some of his contributions.  By failing, refusing and neglecting to consider Plaintiff's choice of panelists, implement student outreach, to use social media to promote the Series, or to otherwise abide by the terms of the Parties' agreement.

N. Failing, refusing, and neglecting to respond timely to the Plaintiff during the course of planning each program.

O. Censoring or otherwise denying certain panelists access to the Series or the opportunity to be involved with the Series based on arbitrary standards not disclosed to or discussed with the Plaintiff.

P.  Failing, refusing and neglecting to allocate the Contribution in a manner consistent with its assurances to the Plaintiff and the parties' written agreement.

Q. Failing to involve Plaintiff in the timely decision-making process for panelists, by blackballing certain panelists without explanation, doing only minimal promotional efforts for the Series, and by enforcing arbitrary decisions on the Plaintiff and the Series.

R. Failing, refusing and neglecting to involve adequate staff and resources with the planning, promotion and implementation of the Series.

S. Negligently, intentionally and in breach of their fiduciary duty to the Plaintiff failing, refusing and neglecting to competently manage, prepare or effectuate the Series.

T. Improperly using and misappropriating the Plaintiff's name, likeness and image. Improperly using and misappropriating the Contribution in a manner inconsistent with the parties' Agreement. Improperly using and misappropriating the Plaintiff's time, labor, creative works, intellectual property and contacts for a purpose never disclosed or intended by or agreed to by the Plaintiff.

U. Repeatedly assuring and warranting to the Plaintiff through its agents, its representatives and DOES 1 to 50, inclusive, that it would adhere to the parties' agreement and the assurances

provided before and after the execution of the parties' agreement and then failing, refusing
and neglecting to do so.

V. Failing to develop and implement the student outreach component of the Series. This
includes, inter alia, failing to develop student study guides or curriculum for teachers, to use
social media in any effective way to reach out or engage students and teachers, or to create a
website, social media links or any viable means for a student outreach program.

35.    The PALEY CENTER and DOES 1 to 50, inclusive, failed, refused, and neglected to
remedy the problems detailed above, to address the concerns of the Plaintiff expressed as far back as
2018; and blackballed certain panelists based on an arbitrary standard not discussed with or disclosed to
the Plaintiff; censored certain viewpoints and potential panelists proposed by the Plaintiff; failed to
engage in student outreach; failed to develop and implement a student outreach component of the Series,
including reaching out to the students and teachers or developing a curriculum for teachers, study guides
and other materials for the students or to make the students a part of the conversation; refused and
neglected to adequately plan, develop and to promote the Series; failed, refused, and neglected to
pursue, multiple outlets and the golden opportunity with C-Span; failed, refused and neglected to
communicate timely with the Plaintiff; as detailed throughout this Complaint; and used and
misappropriated the Plaintiff's money, name, likeness, image, labor, creative works, ideas, and
intellectual property, the several latter without compensating the Plaintiff. The PALEY CENTER, its
agents, employees and representatives, and DOES 1 to 50, inclusive continued to give what proved to be
meaningless assurances and warranties to the Plaintiff that they would abide by their initial assurances
and warranties, the terms of the Agreement, and work with him to effectuate the Series as planned
causing Plaintiff to have a reasonably, good faith belief that they would do so and make good on the
representations and assurances before the Agreement was signed, in the Agreement, and subsequent to
the Agreement was being signed

36.    By doing so, the PALEY CENTER and DOES 1 to 50, inclusive, did not act fairly and in
good faith in that it made less than minimal efforts to promote the Series, to employ multiple outlets, to
enlist speakers without back balling, to create, develop and implement a student outreach program at all,
to use social media to extensively promote the Series, to issue press releases, to do feature interviews, or

1  to have press releases as to the Series panelists or creators.  In addition, there were concerning instances

2  of censorship and blackballing, and thus denying potential panelists the opportunity to be on a program.

3  There is no evidence that the PALEY CENTER, its agents, representatives, and employees and DOES 1

4  to 50, inclusive, made any effort to ensure the success of the Series, especially reach,  in keeping with

5  what Plaintiff had planned or requested or agreed to.  The PALEY CENTER, its agents and

6  representatives and DOES 1 to 50, inclusive, derived a financial, promotional, and reputational benefit

7  from Plaintiff's Contribution, from the use of his name, image and likeness, time, labor, business

8  planning and expertise, creative works, ideas and intellectual property.

9        37.    The Plaintiff fully performed all of his responsibilities under the terms of the Agreement

10  except those that were excused or made impossible by events and circumstances not within his control.

11  At all times herein mentioned, Plaintiff reasonably relied upon the representations of the PALEY

12  CENTER, Reidy, Lewis, Simon and DOES 1 to 50, inclusive.

13        38.    Plaintiff was harmed by the PALEY CENTER's and DOES 1 to 50, inclusive, in their

14  breaches of fiduciary duty to him detailed within this Complaint. This includes his Contribution in the

15  amount of $1,000,000; the use of his name, likeness and image in a Series that does not comport with

16  the Plaintiff's intentions and the assurances he received and the parties' Agreement; the use of his time,

17  labor, creative works, intellectual property, concept, business acumen, and contacts. The Defendants' the

18  PALEY CENTER and DOES 1 to 50, inclusive, refusal to abide by the terms of this Agreement and as

19  detailed in Paragraphs 1 to 29 of this Complaint, each of which are incorporated herein by this reference,

20  damage Plaintiff in an amount to be proven at trial but no less than $250,000 USD.

21  <u>**FOURTH CAUSE OF ACTION**</u>

22  **BREACH OF FIDUCIARY DUTY**

23  **(*Against Defendants PALEY CENTER and DOES 1 to 50, inclusive*)**

24        39.    Plaintiff refers to and incorporates herein by this reference all of the allegations set

25  forth in paragraphs 1 through 38 of this Complaint as though fully set forth herein.

26        40.    The Defendants PALEY CENTER and DOES 1 to 50, inclusive, owed a fiduciary duty

27  and obligation of good faith, fair dealing, loyalty, and due care to the Plaintiff. The PALEY CENTER as

28  a 501(3)( C) corporation received a Contribution from Plaintiff and acted as and were a fiduciary

1  holding the funds in the Plaintiff's Contribution and had a duty to use and allocate those funds as

2  specified in the parties' Agreement and as represented, warranted and assured by the PALEY CENTER,

3  its agents, employes and representatives and DOES 1 to 50, inclusive, to the Plaintiff, as well as the duty

4  of good faith, loyalty and to act in the best interests of Plaintiff based on his contribution and to

5  effectuate the Series, as agreed.

6      41.    The PALEY CENTER and Does 1 to 50, inclusive, and its agents and representatives,

7  including Reidy, Lewis, and Simon, working within the scope of their employment and/or positions and

8  duties with the PALEY CENTER, caused Plaintiff to repose trust and confidence in connection with the

9  Series and his Contribution, as well as additional contributions of his labor, creative works, and

10  intellectual property. The PALEY CENTER is a 501(3) (C) corporation and undertakes a fiduciary duty

11  as to each individual contributing funds to it including the Plaintiff. In addition, Defendants the PALEY

12  CENTER and DOES 1 to 50, inclusive voluntarily accepted a fiduciary role with respect to Plaintiff,

13  including the duty to act with the utmost good faith, loyalty and the best interests of the Plaintiff and the

14  Series.

15      42.    Plaintiff alleges that the PALEY CENTER, its agents and representatives, and DOES 1 to

16  50, inclusive and each of them have knowingly, recklessly, or negligently breached their duties of care

17  and loyalty to Plaintiff by inter alia, failing, refusing and neglecting to abide by the terms of the parties

18  Agreement as detailed in Paragraphs 1 to 39 herein and incorporated herein by this reference; by taking

19  the Plaintiff's Contribution without using it or intending to use it for its intended purpose; by breaching

20  the parties' Agreement as detailed throughout this Complaint; by failing to create, develop and

21  implement a student outreach component of the Series, by blackballing potential panelists, by failing to

22  extensively use social media to promote the Series or to engage in student outreach, by failing to

23  conduct feature length interviews;  by failing to adequately plan and implement the Series; by using the

24  Plaintiff's time, name, image, likeness, uncompensated labor, creative works, and intellectual property

25  for its own benefit; by failing to adequately promote the Series as agreed; by delaying in preparing for

26  and implementing the Series programs, often employing a last minute approach; by making limited of

27  outreach and ignoring opportunities such as C-Span; and by failing, refusing and neglecting to negotiate

28

1  fairly with the Plaintiff and giving him assurances that the Plaintiff reasonably relied upon knowing that

2  it was unlikely that those assurances would be followed up on.

3      43.    At times relevant herein, the named the PALEY CENTER and DOES 1 TO 50, inclusive,

4  have failed to act in good faith, in the best interests of Plaintiff or to adequately and competently

5  effectuate the Series, and to provide an accounting, and with such care as an ordinarily prudent person in

6  a like position would use under similar circumstances.

7      44.    Plaintiff alleges that the PALEY CENTER and DOES 1 TO 50, inclusive, and each of

8  them have breached their duties of care and loyalty to Plaintiff, by failing, refusing and neglecting to

9  effectuate the Series as planned and negotiated and as reasonably expected by the Plaintiff; failing to

10 provide an accounting for the Plaintiff's Contribution; failing to adequately and meaningfully

11 communicate with the Plaintiff; exploiting the Plaintiff's name, likeness, image, labor, time, creative

12 works, intellectual property and contacts, including the specific acts alleged in paragraphs 1 to 40 of this

13 Complaint incorporated herein by this reference; by failing to act in good faith, in the best interests of

14 Plaintiff, and with such care as an ordinarily prudent person in a like position would use under similar

15 circumstances and in keeping with the rules and regulations for a 501(3) (C) corporation, including

16 placing unreasonable conditions upon donations without disclosure, on information and belief conflicts

17 of interest, failing to adhere to corporate formalities, and accepting the Contribution without any real

18 intention of adhering to the specifications of their own assurances and the parties Agreement.

19     45.    As a proximate cause of the actions, errors, and omissions of the PALEY CENTER and

20 DOES 1 TO 50, inclusive, its agents and representatives, Plaintiff has incurred damages including, but

21 not limited to, the following: (a) the loss of his Contribution; (b) the use and misappropriation of his

22 name, likeness and image in a manner not agreed to; (c) the use and misappropriation of his creative

23 works and intellectual property; and (d) the uncompensated use of his time, labor, business planning,

24 acumen and expertise, creative works, intellectual property and use of, inter alia, industry contacts, each

25 in an amount to be proven at trial. As a result of the actions and omissions set forth within this

26 Complaint, the PALEY CENTER and DOES 1 to 50, inclusive, are liable to Plaintiff in an amount to be

27 proven at trial.

28

**FIFTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

*(Against All Defendants PALEY CENTER and DOES 1 to 50, inclusive)*

46.    Plaintiff hereby refers to and incorporates by reference each of the paragraphs 1 through 45, set forth above as though fully set forth hereinafter.

47.    The PALEY CENTER and DOES 1 to 50, inclusive, and its agents and representatives in an effort to induce Plaintiff to contribute sums to it, made several assurances to the Plaintiff before he executed the Agreement.  These assurances were inter alia, that the format of the Series would include controversial subjects, the development and implementation of a student outreach program, and the extensive use of social media to promote the Series, that each of the Defendants, including DOES 1 to 50, inclusive, would make commercially extensive efforts to use outlets that would extend the reach of the program.

- Some of the assurances made to the Plaintiff were inter alia. The Series proposed by Plaintiff would be a feather in the cap of the PALEY CENTER.

- The Series would be a high priority program for the PALEY CENTER.

- The PALEY CENTER, its agents and representatives and DOES 1 to 50, inclusive would work to develop and implement a student outreach program which included student study guides, a teacher curriculum and the extensive use of social media and other methods to reach out and engage students.

- The Series would be a seminal program in which the agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, had broad opportunities to challenge the world, just a bit, with balanced and forthright discussions. The Series would involve audience-building outlets beyond the one-night theater program.

- Agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, stated that there was bias in the media, without question, and the Series would help the public to come to grips with and better understand that.

- Agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, assured the Plaintiff that they had no intention of blackballing of panelists.

1 • Agents and representatives of the PALEY CENTER and DOES 1 to 50, inclusive, assured

2 Plaintiff not to be concerned about the fact that the PALEY CENTER is located in the New York

3 media bubble and that they would include panelists from other geographic areas with different

4 points of view, without censorship or blackballing.

5 • That social media would be used extensively to promote and develop the Series.

6 • That there would be press releases as to the panelists.

7 • That there would be feature-length interviews with the Plaintiff and other panelists.

8 • Called Plaintiff's idea of having evenly balanced panelists 'brilliant'.

9 • There were assurances made to the PLAINTIFF by agents and representatives of the PALEY

10 CENTER and DOES 1 to 50, inclusive, that the PALEY CENTER and DOES 1 to 50, inclusive,

11 had not always done a lot of outreach but agreed to change that for the Series.  Further

12 assurances and representations were made to the Plaintiff by the agents and representatives of the

13 PALEY CENTER and DOES 1 to 50, inclusive, that they recognized that the value of Plaintiff's

14 initiative and proposed Series lay in outreach, particularly with the broader public, students and

15 teachers.

16 • The PALEY CENTER, DOES 1 to 50, inclusive, and each of their agents and representatives

17 had no reasonable grounds to believe that these representations were true and each of these

18 representations was made with an intent to induce Plaintiff to make his Contribution as well as to

19 contribute his name, image, likeness, time, labor, creative works, intellectual property, concept

20 and expertise, and ideas to the PALEY CENTER, DOES 1 to 50, inclusive, and their agents and

21 representatives as well as to silence the Plaintiff's Complaints when the Series and each program

22 was not organized, developed or implemented as agreed. These were in fact misrepresentations

23 and the true facts are that the PALEY CENTER and DOES 1 to 50, inclusive, and its agents and

24 representatives had no true intention of adhering to the assurances provided to the Plaintiff.

25  48. Alternatively, while agents and representatives for the PALEY CENTER and DOES 1 to

26 50, inclusive, may have honestly believed that the foregoing representations were true, each of them had

27 no reasonable grounds for believing the representations were true when they were made. Further, each

28 of them knew or had good reason to know that it was unlikely that these representations would be

1  adhered to, and that Plaintiff was reasonably relying upon their representations before he signed the

2  Agreement and during the course of the Series for which he was involved.

3      49.    Plaintiff reasonably relied upon the PALEY CENTER, DOES 1 to 50, inclusive, and each

4  of its agents and representatives with whom he dealt, worked with and negotiated. Plaintiff's trust and

5  confidence stemmed, not only from the PALEY CENTER's reputation, but repeated assurances from

6  Reidy, Lewis, and Simon and the agents, employees and representatives of the PALEY CENTER and

7  DOES 1 to 50, inclusive, that his plans, goals, and specifications for the Series would be adhered to.

8      50.    Plaintiff's reliance on Reidy's, Lewis', and Simon's and the agents and representatives of

9  the PALEY CENTER and DOES 1 to 50, inclusive's representations were a substantial factor in causing

10  him harm. Plaintiff was substantially harmed in that he made his Contribution of $1,000,000; his name,

11  image and likeness was used in an manner never intended or agreed to; the Series bore his name from

12  2017 to 2023; he contributed his uncompensated time, labor, creative works, intellectual property,

13  business acumen, expertise, and concepts, ideas and access to contacts in the industry from which the

14  PALEY CENTER and DOES 1 to 50, inclusive, and its agents and representatives obtained a financial,

15  professional, and reputational benefit.

## SIXTH CAUSE OF ACTION

### INVOLUNTARY TRUST

***(Against All Defendants, PALEY CENTER and DOES 1 to 50, inclusive)***

19      51.    Plaintiff realleges and incorporates here the allegations contained in paragraphs 1

20  Through 50, above.

21      52.    By means of the fraud, accident, mistake, undue influence, the violation of a trust or other

22  wrongful acts alleged above, defendants, the PALEY CENTER and Does 1 to 50, inclusive, and each of

23  them. acquired money and property, including specifically the sum of $1,000,000 from the Plaintiff and

24  now wrongfully detain said money and property such that they became involuntary trustees of such

25  money and property for the benefit of Plaintiff pursuant to California Civil Code sections 2223 and

26  2224.

27

28

1

2

3

4    **SEVENTH CAUSE OF ACTION**

5    **UNJUST ENRICHMENT**

6    ***(Against All Defendants PALEY CENTER and DOES 1 to 50, inclusive)***

7        53.    Plaintiff realleges and incorporates here the allegations contained in paragraphs 1 through 52, above.

8        54.    By means of the fraud, negligence, and other wrongful acts alleged above, defendants, the PALEY CENTER and Does 1 to 50, inclusive, and each of them, acquired money and property, with knowledge of said fraudulent, negligent, and wrongful acts, including specifically the sum of $1,000,000 contributed by Plaintiff to the PALEY CENTER, his labor, time, creative works, intellectual property, name, likeness, and image, concepts, acumen and expertise, and ideas such that defendants hold such funds in constructive trust for Plaintiff and/or must make restitution to Plaintiff in a sum sufficient to deprive defendants, the PALEY CENTER and Does 1 to 50, inclusive, of all unjust enrichment derived from the use of said funds as well as the use of Plaintiff's labor, time, creative works, intellectual property and ideas.

**EIGHTH CAUSE OF ACTION**

**CONVERSION**

***(Against All Defendants PALEY CENTER and DOES 1 to 50, inclusive)***

        55.    Plaintiff realleges and incorporates here the allegations contained in paragraphs 1 through 54, above.

        56.    At all times herein mentioned, and in particular, on or about October, 2016, Plaintiff was the rightful owner, and was entitled to the possession of the contribution sum of $1,000,000 USD.

        57.    At all times herein mentioned Plaintiff was the rightful owner and was entitled to the possession of the funds in the amount of $1,000,000 USD.

        58.    By means of misrepresentations, errors, negligence, breaches of fiduciary duty, and omissions made by the Defendants, the PALEY CENTER and DOES 1 to 50, inclusive, and their agents and representatives' defendants and each of them fraudulently, negligently, and wrongfully and converted induced Plaintiff to contribute the sum of $1,000,000 to the PALEY CENTER and converted the same to their use.

59.     By virtue of the allegations set forth in this complaint, and previous communications, Plaintiff, in an effort to be gracious, suggesting the program be suspended and that the defendants PALEY CENTER and DOES 1 to 50, inclusive, return only 50% (or $500,000) of the above-mentioned property and retain the other $500,000 for a use of their choices. Defendants the PALEY CENTER and DOES 1 to 50, inclusive, failed and refused, and continue to fail and refuse, to return the 50% to Plaintiff.

60.     As a proximate, direct, and legal result of the defendants' conversion, Plaintiff has been denied the use of those funds, all to Plaintiff's damage in an amount to be proved at trial.

61.     Since the time of the defendants' PALEY CENTER and DOES 1 to 50, inclusive conversion of the above-mentioned property to their own use Plaintiff has incurred costs, including but not limited to, costs to investigate said conversion, the loss of use of those funds, attorney's fees and costs all to Plaintiff's further damage in an amount to be proved at trial.

62.     The defendants' acts alleged herein were oppressive, fraudulent and malicious, negligent and in reach of their fiduciary duty to the Plaintiff.

63.     To the extent that said conversion occurred more than three years prior to the commencement of the action, defendants and DOES 1 to 50, inclusive, fraudulently and negligently concealed their conduct in that they failed, refused and neglected to respond to Plaintiff in any meaningful way, delayed in responding, made promises and assurances to the Plaintiff that they would rectify the situation but failed to do so, and continued to induce Plaintiff to be involved in the Series. Plaintiff was never given a clear answer as to how the funds would be invested, if improvements or changes would be made to the Series or if the PALEY CENTER and DOES 1 to 50, inclusive, ever really intended to establish and implement the Series as negotiated and represented to Plaintiff. There were instances in which the Defendants, PALEY CENTER and DOES 1 to 50, inclusive, did not respond adequately to Plaintiff's concerns. When the PALEY CENTER, its agents and representatives, and DOES 1 to 50, inclusive, did respond to the Plaintiff, their agents and representatives and DOES 1 TO 50, inclusive, and each of them continued to give Plaintiff assurances, warranties and representations that the Defendants, DOES 1 to 50, inclusive, and each of them would adhere to the parties' Agreement,

1    implied in fact contract, and their fiduciary duties to the Plaintiff and the representations, assurances,

2    and warranties made to the Plaintiff by each of them.

3    64.    Defendants' the PALEY CENTER and DOES 1 to 50 inclusive conduct, as described

4    above, within this Complaint, and incorporated by reference herein, constitutes unlawful, unfair, and/or

5    fraudulent business practices in violation of California Business & Professions Code sections 17200, et

6    seq, including by agreeing to and soliciting contributions for the Series and other presentations by

7    making false promises, negligent representations, failing to provide competent staffing for the Series,

8    and in breach of their fiduciary duty to contributors, by failing, refusing and neglecting to create and

9    implement a Series in keeping with the terms negotiated for, by failing, refusing and neglecting to

10   competently or adequately prepare, organize and implement the Series, by failing, refusing and

11   neglecting to use other platforms and outlets available to them for the Series, by failing, refusing and

12   neglecting to develop and implement a student outreach component of the Series, by blackballing certain

13   proposed panelists, by censorship certain content and viewpoints, by failing, refusing and neglecting to

14   allow certain kinds of speech and subject matter to be presented in the Series, by failing, refusing and

15   neglecting to provide an accounting of the funds contributed by Plaintiff, by failing, refusing and

16   neglecting to exploit appropriate outlets for the Series, and by failing, refusing and neglecting to make

17   adequate use of social media or other media to promote the Series as previously agreed and as alleged

18   throughout this Complaint.

19   65.    In order to settle this matter amicably, the Plaintiff requested that the PALEY CENTER

20   and DOES 1 to 50, inclusive, cancel the program and return only half of the amount contributed to the

21   Series as a compromise. The offer was rejected out of hand. The Plaintiff is the rightful owner of the

22   sum of $1,000,000 USD contributed to the PALEY CENTER and DOES 1 to 50, inclusive, for a

23   specific purpose which was not effectuated and has a legal right to the possession of those funds.

24   66.    The PALEY CENTER and DOES 1 to 50, inclusive, knowingly, intentionally,

25   negligently and recklessly interfered with Plaintiff's use of those funds and his right to an accounting by

26   failing, refusing and neglecting to refund the sums owed to the Plaintiff; or to provide an accounting,

27   and by holding the funds in an account unknown to which the Plaintiff does not have access, and failing,

28   refusing and neglecting to return the funds after a demand was made by the Plaintiff.

1    67.    Plaintiff did not consent for the PALEY CENTER and DOES 1 to 50, inclusive to

2    maintain possession and control of the funds detailed herein or, to use the funds in the manner described

3    within this Complaint.

4    68.    Plaintiff was harmed and the PALEY CENTER and Does 1-50 inclusive conduct was a

5    substantial factor in causing Plaintiff harm in an amount to be proven at trial, but no less than

6    $1,000,000 USD.

7    **NINTH CAUSE OF ACTION**

8    **VIOLATIONS OF UNFAIR COMPETITION LAW**

9    **(BUSINESS & PROFESSIONS CODE §17200)**

10    ***(Against All Defendants, PALEY CENTER and DOES 1 TO 50, inclusive)***

11    69.    Plaintiff realleges and incorporates here the allegations contained in paragraphs 1 through

12    68, above.

13    70.    In making said negligent representations, in said concealment and suppression of facts, in

14    breaching their fiduciary duty to the Plaintiff, in refusing to abide by the terms of the parties' written

15    agreement and other representations, by failing, refusing and neglecting to provide an accounting, by

16    failing, refusing and neglecting to use Plaintiff's contribution for its intended purpose, by failing to

17    abide by the representations and assurances provided to the Plaintiff, by using the Plaintiff's name,

18    image, likeness, time, labor, intellectual property, creative works, ideas, business acumen and concept

19    for unintended purposes, and without compensating the Plaintiff, and in the other practices alleged

20    within this Complaint, defendants, and each of them, engaged in unlawful, fraudulent, and unfair

21    business practices, in violation of California Business and Professions Code sections 17200 *et seq.*

22    71.    Specifically, defendants, and each of them, committed acts of unfair competition by

23    engaging in fraudulent business acts and acquired interests in money and property, Plaintiff's name,

24    likeness and image and ideas, concept, use of the Plaintiff's business acumen and expertise, and creative

25    works, by means of unfair competition, as alleged within this Complaint. In addition, defendants, and

26    each of them, committed acts of unfair competition and acquired interests in money and property by

27    means of such unfair competition by engaging in wrongful, reckless and negligent acts, including but

28    not limited to the following acts set forth within this cause of action and within this Complaint,

1    including inter alia, causing and inducting Plaintiff to make his Contribution and then using those funds

2    for a purpose other than intended, promised or agreed to both orally and within the parties' written

3    Agreement; engaging in acts of censorship and blackballing; failing to develop and implement a student

4    outreach program; misusing the Plaintiff's name, image and likeness as well as his time, labor, concept

5    and business expertise all without compensation; failing to develop and use an extensive social media

6    program for curriculum and student study guides; by failing to place feature length interviews or press

7    releases pertaining to the Series. In making said negligent, reckless, false representations, in said

8    concealment and suppression of facts, and in the other practices alleged in paragraphs 1 through 64

9    herein, defendants, and each of them, were, and currently are, engaged in unfair business practices, in

10    violation of California Business and Professions Code section 17200 *et seq.*

11    72.    In making said false and negligent representations to Plaintiff, in breaching their

12    fiduciary duties to Plaintiff, by using Plaintiff's name, likeness and image, ideas, concept, and creative

13    works, by failing, refusing and neglecting to provide an accounting, in said concealment and suppression

14    of facts, by agreeing to a Contribution with no intention of adhering to the specifications of it, by

15    continually assuring the Plaintiff that the Defendants and each of them would agree to terms of their

16    written and oral agreements for the Series and failing to do so, and in the other practices alleged within

17    this Complaint, defendants, and each of them, were, and currently are, engaged in unfair business

18    practices, in violation of California Business and Professions Code section 17200 *et seq.*

19    73.    To the extent said unfair competition may have occurred more than four years prior to the

20    commencement of this action, defendants fraudulently and negligently in breach of their fiduciary duty

21    to the Plaintiff concealed their conduct and continued to assure the Plaintiff that the defendants and each

22    of them would correct or remedy the issues upon which assurances Plaintiff reasonably relied upon, and

23    Plaintiff was unable to discover such conduct, as more fully alleged in the preceding paragraphs of this

24    Complaint, such that the filing of this claim is timely.

25    74.    To the extent the defendants' unfair competition constituted fraud, the Plaintiff's claim did

26    not accrue until he discovered the facts constituting breaches of fiduciary duty, and other wrongful acts

27    as alleged herein and, as such, the claim based on such unfair competition is timely.

28

# TENTH CAUSE OF ACTION

## CONSTRUCTIVE TRUST

### *(Against PALEY CENTER and DOES 1 to 50, inclusive).*

75.    Plaintiff refers to and incorporates herein by this reference all of the allegations set forth in paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76.    California law provides that a constructive trust is created where a defendant takes a property by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act. By court order, a constructive trust imposes trustee status on the defendant wherein the Defendant holds the property but cannot benefit.

77.    As a proximate result of the PALEY CENTER's and DOES 1 to 50, inclusive and their agents' and representatives' breaches of fiduciary duty, negligent representations, failure, refusal and neglect to act or to provide an accounting, and otherwise wrongful conduct as alleged herein in paragraph 1 to 71 of this Complaint and incorporated herein by this reference, Plaintiff has expended the sum of $1,000,000, expended his time, the use of his name, likeness and image, and contributed his creative works, intellectual property, concepts and expertise, time and labor to the Series and to the PALEY CENTER and DOES 1 to 50, inclusive.

78.    By reason of the fraudulent, negligent, reckless and otherwise wrongful manner in which the defendants the PALEY CENTER and Does 1 to 50, inclusive, and each of them, obtained `their alleged right, claim or interest in and to the property funds of the Plaintiff as well as the use of his name likeness, image, his creative works, concept and expertise,  and labor, the PALEY CENTER and DOES 1 to 50, inclusive, and each of them, have no legal or equitable right, claim or interest therein, but, instead, Defendants the PALEY CENTER and DOES 1 to 50, inclusive, and each of them are involuntary trustees holding said property of the Contribution therefrom in constructive trust for Plaintiff with the duty to convey the same to Plaintiff forthwith.

///

///

///

///

**ELEVENTH CAUSE OF ACTION**

**ACCOUNTING**

*(Against Defendants PALEY CENTER and DOES 1-50, INCLUSIVE)*

79.     Plaintiff refers to and incorporates herein by this reference all of the allegations set forth in paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.     Due to the misrepresentations, negligence, misrepresentations, failure to abide by the terms of the parties' agreement, to account for how the funds contributed were allocated, expended or otherwise utilized, and other actions and misconduct alleged herein as to the PALEY CENTER and DOES 1 to 50, inclusive, the Plaintiff is unable to determine the true nature of the funds contributed, how they were spent or otherwise used, and whether any improper profit or benefits were taken.

81.     On or about October 4, 2016 Plaintiff and defendant entered into a written contract in which Plaintiff agreed to contribute the sum of $1,000,000 USD to the PALEY CENTER for the purpose of establishing and implementing the Series.  Plaintiff subsequently contributed the sum of $1,000,000 USD to the PALEY CENTER.  As set forth above, there were several terms and conditions to the parties' agreements and representation made to the Plaintiff by the PALEY CENTER, its agents and representatives and DOES 1 to 50, inclusive, during the course of the parties' negotiations as to which the Plaintiff reasonably relied.  Plaintiff further reasonably relied on the assurances and warranties by the PALEY CENTER, its agents, its representatives, and DOES 1 to 50, inclusive, that the Series would be organized, developed and implemented as agreed and represented and that Plaintiff's Contribution, his labor, intellectual property, ideas, creative works, concept and expertise, and other efforts would be used for that purpose and as agreed, represented and assured to the Plaintiff.  Being that the PALEY CENTER is a 501(3) (C ) corporation, Plaintiff reasonably relied that the funds contributed would be used for a specified purpose and in accordance with representations made to him and detailed throughout this Complaint.

82.     Between October 4, 2016 and the commencement of this action, defendant, as a result of the parties' agreements and representations made by the PALEY CENTER, DOES 1 to 50, inclusive, their agents and representatives and each of them Defendants and each of them have obtained and now possesses funds or property received or acquired in the course of its relationship with Plaintiff. Plaintiff

1 has requested an accounting of how those funds were used and allocated. To date, the PALEY CENTER
2 and DOES 1 TO 50, inclusive has failed, refused and neglected to provide such an accounting.

3      83.      The extent of the allocation and use of the funds or property acquired by the PALEY
4 CENTER DOES 1 TO 50, inclusive in the course of and in relation to the Plaintiff's Contribution is not
5 known by Plaintiff and is ascertainable only by an accounting.

6      84.      Plaintiff demands judgment from the PALEY CENTER and DOES 1 TO 50, inclusive
7 for: An accounting of all funds and property received by the PALEY CENTER as a result of the parties
8 agreement in relation to the Series and how those funds were allocated and otherwise utilized.

9                          **TWELTH CAUSE OF ACTION**

10                          **DECLARATORY RELIEF**

11                  ***(Against Defendants PALEY CENTER, and DOES 1-50, INCLUSIVE)***

12      85.      Plaintiff refers to and incorporates herein by this reference all of the allegations set forth
13 in paragraphs 1 through 84 of this Complaint as though fully set forth herein.

14      86.      An actual controversy exists. PLAINTIFF contends that DEFENDANTS the PALEY
15 CENTER and DOES 1-50, inclusive and each of them obtained seven figure contribution from the
16 Plaintiff, used his name, likeness and image, labor, intellectual property, creative works in breach of
17 their written and implied in fact agreements and fiduciary duties to the Plaintiff, failed, refused, and
18 neglected to provide an accounting and engaged in other acts and conduct that have caused harm to the
19 Plaintiff as detailed in Paragraphs 1 to 81 herein and incorporated herein by this reference.

20      87.      A judicial declaration of the rights and responsibilities of each named party in this matter
21 Set forth caused harm and damages. Declaratory relief is warranted in this case because: (1) an actual
22 controversy has arisen and now exists between PLAINTIFF and DEFENDANTS and each of them as to
23 (A) the proper and appropriate use of the Plaintiff's Contribution; (B) the proper and appropriate use of
24 the development, implementation and marketing of the Series and whether the Defendants the PALEY
25 CENTER and DOES 1 to 50, inclusive, breached their fiduciary duties to Plaintiff and/or were negligent
26 as to the parties' Agreement and development and implementation of the Series; and (C) whether the
27 PALEY CENTER and DOES 1 to 50, inclusive, misused Plaintiff's name, likeness, image, labor,
28 creative works, intellectual property and ideas., (2) The parties rights and responsibilities pursuant to the

1    Agreement and any implied in fact agreements; and (3) there is no adequate remedy in the ordinary

2    course of law.

3                            **IV.    PRAYERS FOR RELIEF**

4    **WHEREFORE,** Plaintiff prays for judgment against Defendants the PALEY CENTER and DOES 1

5    to 50, inclusive and each of them as follows:

6              1.   For compensatory damages against all Defendants in an amount exceeding Two

7                   Hundred and Fifty Thousand Dollars in a sum according to proof at trial;

8              2.   For special damages in a sum according to proof at trial;

9              3.   For incidental and consequential damages against all Defendants in an amount

10                  according to proof at trial;

11             4.   For pre-judgment interest according to proof;

12             5.   An accounting;

13             6.   Injunctive relief;

14             7.   Accounting of Plaintiff's Contribution;

15             8.   Constructive trust as to Plaintiff's Contribution;

16             9.   For pre-trial interest according to proof;

17             10.  For post-judgment interest according to proof;

18             11.  For the amounts of funds paid to each Defendant according to proof;

19             12.  For general and special damages to the extent that the Defendants are deemed to

20                  have been unjustly enriched according to proof;

21             13.  For additional economic damages suffered by the Plaintiff including, inter alia the

22                  amount of the Plaintiff's Contribution according to proof;

23             14.  For disgorgement of any funds paid by the Plaintiff to any Defendant for the use

24                  of those funds;

25             15.  Restitution in an amount to be proven at trial;

26             16.  For costs of suit incurred herein;

27             17.  For a declaration that Defendants the PALEY CENTER and Does 1 to 50,

28

---

1    inclusive, hold the Plaintiff's Contribution as constructive trustees for the benefit

2    of the Plaintiff;

3    18.    For attorney's fees to the extent allowed by law;

4    19.    For punitive damages to the maximum extent allowed by law, according to proof

5    in an amount sufficient to punish, deter and prevent future conduct;

6    20.    An accounting of all funds and property received by the PALEY CENTER and

7    DOES 1 to 50, inclusive, in defendant's capacity as a fiduciary for and because of

8    its fiduciary relationship with the Plaintiff and payment over of those funds and

9    property;

10    21.    For any other damages and relief to be assessed by a trier of fact and as allowed

11    by law;

12    22.    For such other and further relief as the Court may deem just and proper;

13

14

15    **<u>DEMAND FOR JURY TRIAL</u>**.  Plaintiff demands a jury trial.

16

17

18    Dated: December 2, 2024                    HILLARY JOHNS, TRIAL LAWYER

19                                              DocuSigned by:

20                                              Hillary Johns

21                                              6CDFBD7344A04D6
                                               By: HILLARY JOHNS, ESQ.,
22                                              Attorneys for Plaintiff
                                               James P. Jimirro
23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

James P. Jimirro

September 20, 2016

Maureen Reidy
The Paley Center for Media
President and CEO
25 West 52nd Street
New York, New York 10019

Dear Maureen:

I am delighted to inform you of my promise to contribute the sum of $1,000,000 to The Paley Center for Media ("Paley") to establish and endow The James P. Jimirro Media Impact Series (the "Series").

I shall satisfy this commitment by making one contribution in the amount of $1,000,000 to be made on or before January 31, 2017. My contribution shall be made in cash or marketable securities.

This gift shall be used by Paley to create and support an annual program which promotes, in the broadest sense, the impact of media on our culture and society. The Series shall be called *The James P. Jimirro Media Impact Series*, and its structure, content, and agenda shall be determined by Paley Media Programming Department and Curators. The Series may be presented through PaleyLive or PaleyImpact, or any other presenting vehicle produced and determined by Paley. I understand that Paley shall retain all rights to the Series and each program that is part of it. I or my designee will participate in a planning session with the Paley Curators every year during the planning of the program for the Series, provided that after such planning sessions, Paley shall have final approval over all facets of the program.

The mission statement that will guide development of all programs in this Series is as follows:

**The purpose of the *James P Jimirro Media Impact Series* is to cast light on the role of media in influencing thought and behavior. Designed to reach media professionals, students, and the public at large, it aims to encourage careful consideration of this phenomenon and, accordingly, foster more critical viewers and readers.**

In order to benefit as soon as possible, I authorize Paley, in their discretion, to use up to $50,000 of my contribution for an immediate and expendable expenditure to potentially establish the Series prior to the end of the 2017 calendar year and to issue a press release to announce and publicize the Series. For each program in the Series, I or my designee will provide the program introduction to the audience. For the inaugural program in the Series, Paley will arrange for me to walk the press line.

Furthermore, the remainder of this gift, shall be invested in The Paley Center for Media Endowment Fund and shall be irrevocable. The Board of Trustees Finance Committee shall appropriate for expenditure and use for the purposes specified above such portion of its income, as determined by Paley's Board of Trustees according to its spending policies for Paley's endowment funds, and as such spending is deemed reasonably prudent by the Board of Trustees. In making this determination, it is my understanding that the Board of Trustees takes into account several factors, including Paley's needs in carrying out its organizational mission, Paley's present and anticipated financial requirements, and general economic conditions. It is my understanding that in recent years the Board of Trustees Finance Committee has considered it prudent to spend approximately 5% of the value of such funds each year for support of operations, and reviews its spending determination annually to determine whether it remains prudent. A portion of such funds shall be allocated annually from The Paley Center for Media Endowment Fund to support and underwrite the program for the Series.

Paley shall issue a report to me no later than March 31st of each calendar year containing an analytical assessment of the Series from the previous calendar year, attendance information, and other relevant information; provided that such report and the information it contains is in accordance with all applicable privacy laws and other agreements in place.

If at any time in the discretion of Paley, the funds shall no longer be necessary for the stated purpose or such purpose cannot be accomplished, Paley shall have the authority to designate its use for the purpose which it determines closely parallels the original intent of this agreement; provided that Paley shall first consult with me or my designee about this matter.

Paley, may rely upon this commitment in support of their fundraising campaign and in their efforts to solicit additional contributions in support of Paley. It is understood that Paley may announce this commitment in a manner that has been approved in advance by me. If this commitment is acceptable to Paley, please sign this agreement and return a copy to me for my records.

Very truly yours,

James P. Jimirro
Date:  10/ 4/16

Accepted and Agreed:
The Paley Center for Media

By:
David Schoer
Vice President, Finance